IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**LORIE BLOCK ROBERTS**                                                              **PLAINTIFF**

v.                                                               **CIVIL ACTION NO.: 3:20-cv-117-JMV**

**COMMISSIONER OF SOCIAL SECURITY**                             **DEFENDANT**

### MEMORANDUM OPINION

      This cause is before the Court on the Plaintiff's complaint pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable final decision of the Commissioner of the Social Security Administration regarding applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having reviewed the record, the administrative transcript, the briefs of the parties, and the applicable law and having heard oral argument, finds the final decision of the Commissioner of Social Security should be affirmed for the reasons set out below.

### Introduction

      Plaintiff presents the following assignments of error for this appeal:

1. The ALJ erred in his evaluation of the opinion of Denise Phillips, mental health therapist.

2. The ALJ erred in his failure to compare the RFC of the 2019 hearing with the 2016 hearing.

3. The ALJ erred in failing to review his previous RFC from his 2016 decision.

4. The ALJ erred in his evaluation of the opinion of Consultative Examiner Dr. Jim

Adams.

### Procedural History/Background

The Court adopts the procedural history of the case as presented in the parties' briefing and adopts the Plaintiff's medical history as recited in the administrative law judge's ("ALJ") decision.

### Discussion

#### A. Standard of Review and Burden of Proof

The Court's review of the Commissioner's final decision that Plaintiff was not disabled is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court recently explained:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, *the threshold for such evidentiary sufficiency is not high*. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasis added) (citations and internal quotations and brackets omitted).

Under the substantial evidence standard, "[t]he agency's findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah*

*v. Barr*, 140 S. Ct. 1683, 1692 (2020) (citations and internal quotations omitted). In applying the substantial evidence standard, the Court "may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The ALJ has the sole responsibility for determining a claimant's disability status at the hearing level. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990); 20 C.F.R. §§ 404.1546(c), 416.946(c). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *See Greenspan*, 38 F.3d at 236. At step five, the Commissioner has the burden to produce "evidence about the existence of work in the national economy." *See* 20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3). The Commissioner may meet this step five burden by relying on the Medical-Vocational Guidelines or vocational expert testimony. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). Once the Commissioner shows that a claimant's functional abilities and vocational profile would allow performing a significant number of jobs, the burden shifts to the claimant to rebut this finding. *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### B. Plaintiff's Assignments of Error

1. **The ALJ erred in his evaluation of the opinion of Denise Phillips, mental health therapist.**

For her first contention of error, Plaintiff argues the ALJ erred by finding an opinion from Mental Health Therapist Denise Phillips was "highly persuasive," yet failing to "evaluate" a

portion of her opinion and some of her findings. Specifically, Plaintiff contends Therapist Phillips' opinion that Plaintiff had a "poor" ability to "behave in an emotionally stable manner" and her findings that the Plaintiff isolated herself and was making little progress (at the time the report was done) were (1) not evaluated by the ALJ and (2) full evaluation of Therapist Phillips' opinion should have led to a finding of disabled under Social Security Ruling ("SSR") 85-15. First, the Court agrees with the Commissioner that pursuant to the new regulations governing evaluation of medical opinions, there was no error.

Because Plaintiff applied for DIB and SSI in July 2017, the new regulations governing the consideration and articulation of medical opinions and prior administrative medical findings (20 C.F.R. § 404.1520c) apply. Under the new regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(a), 404.1520(b)(2).

The new regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

>(1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
>(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.
>
>(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3).

Based on the foregoing, Plaintiff has shown no error with regard to the ALJ's articulation of his consideration of the therapist's opinion. And to the extent the ALJ erred in articulation of his consideration of the therapist's opinion, any error was harmless. The Court agrees with the Commissioner's position that "[t]he ALJ's RFC assessment reasonably accommodates Therapist Phillips' "poor" ratings in dealing with the public, dealing with work stresses, and behaving in an emotionally stable manner by limiting Plaintiff to work in an

environment with no public exposure, reduced work-related interpersonal contact, and no more than simple, repetitive work tasks." *See* Def.'s Br. p. 7. As such, the undersigned is not convinced that remanding the case on this issue might lead to a different result.

Next, Plaintiff argues that had the ALJ fully evaluated Therapist Phillips' opinion, SSR 85-15 would have directed a finding of disability. This argument also fails. In this case the RFC found by the ALJ reasonably included all the claimant's mental limitations, and vocational expert testimony supports the conclusion she was not disabled.[1]

> 2. **The ALJ erred in his failure to compare the RFC of the 2019 hearing with the 2016 hearing, and the ALJ erred in failing to review his previous RFC from his 2016 decision.**

These arguments are related and without merit for the same reasons. Plaintiff suggests the part of the ALJ's RFC finding from his 2016 decision (on prior claims) that indicates "[t]he claimant may *occasionally* handle, finger, feel, and grasp with the right hand" conflicts with the portion of the ALJ's 2019 RFC finding (on later claims) that indicates "[t]he claimant may *frequently* handle, finger, feel, and grasp with both hands." First, the Court agrees with Plaintiff that the acquiescence rulings she cites are not binding on this Court.[2] Nor are they persuasive

---

[1] Plaintiff highlights language from SSR 85-15 that provides that "a substantial loss of ability to meet any of the[] basic [mental] work-related activities would severely limit the potential occupational base . . . [and] would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base." However, beyond conclusory argument by her counsel during oral argument, Plaintiff submits neither evidence nor legal authority to support her suggestion that Therapist Phillips' opinion translates into the level of "substantial loss of ability" contemplated by SSR 85-15. Furthermore, Plaintiff failed to meet her burden to show she could not perform the jobs proffered by the vocational expert.

[2] Plaintiff submits:

> As described in AR 98-3(6), the Sixth Circuit in *Dennard* [*v. Secretary of Health and Human Services,* 907 F.2d 598 (6th Cir. 1990),] concluded that where the final decision of SSA after a hearing on a prior disability claim contains a finding of the demands of a claimant's past relevant work, SSA may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding. AR 98-4(6) explains that, in *Drummond* [*v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997*)*], the Sixth Circuit concluded that where such a final decision by SSA on a prior disability claim contains a finding of a claimant's residual functional capacity (RFC), SSA may not make a

here. Even Plaintiff acknowledges new evidence regarding her carpal tunnel syndrome was submitted with the later claims (filed in July 2017). Plaintiff attempts to minimize, however, the fact that her treating orthopedist, Eric V. Lewis, M.D., completed a "Work Status" form that indicated she could return to "limited" duty work on 5-15-18 and ignores the fact she received restrictions in "lifting, grabbing, pulling, pushing, [and] grasping" with both hands of 11-20 lbs at a rate of "frequent;" 21-30 lbs at a rate of "occasional;" and less than 10 lbs at a rate of "constant."[3] Plaintiff has failed to persuade this Court that the ALJ was bound by or should have considered his prior RFC finding that limited the claimant to "occasional" manipulative functions *for the right hand only* in the face of new evidence, particularly in the form of the Dr. Lewis' Work Status report, that indicates Plaintiff could *frequently* lift, grab, grasp, etc., up to 20 pounds. Indeed, the Work Status report has not been controverted by other medical evidence.[4]

---

> different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's RFC.
>
> Admittedly as the HALLEX continues:
> Both the *Dennard* AR and the *Drummond* AR apply only in cases involving claimants who reside in Kentucky, Michigan, Ohio, or Tennessee at the time of the determination or decision on the subsequent claim at the initial, reconsideration or the Administrative Law Judge (ALJ) hearing or Appeals Council (AC) level.

Pl.'s Br. p.12.

[3] While Plaintiff describes this form as "difficult to read," the Court found it easy enough to read and consistent with the ALJ's recitation regarding the restrictions given. Additionally, while Plaintiff states the form included the findings of a physician's assistant, it appears to the Court (consistent with the ALJ's recitation) the Work Status form was signed by the claimant's physician, Dr. Lewis.

[4] During a September 27, 2017, consultative examination of Plaintiff, Dr. Jim Adams found in part as follows:

> in a situp fashion. She had 5/5 grip, biceps, triceps, quadriceps and hamstring strength bilaterally. She was able to elevate both great toes equally in the sitting position and also, to gross muscle testing, had equal plantar flexion and dorsal flexion strength in the feet, despite the fact she wears the brace. She had good manual dexterity and full range of motion of all fingers, elbows, forearms, shoulders, hips and ankles. Motion of the left wrist was normal. The right wrist showed 55° flexion, 40° extension, 40° ulnar deviation and 15° radial deviation. She had a scar over the dorsal right forearm, another scar running vertical over the left biceps area and scars over the anterior, right knee. The right knee joint appeared enlarged. Motion of the left

Based on these findings, there is no indication of any limitation with regard to Plaintiff's *left* hand. Furthermore,

Furthermore, during the hearing Plaintiff testified she performed sweeping and cooking (with breaks); said she could handle, finger, and feel canned goods and put them away in cabinets overhead; agreed she could lift and carry a gallon of milk; and reported she had her "carpal tunnel done" and "[i]t's amazing." Ultimately, Plaintiff has identified no prejudicial error.

**3. The ALJ erred in his evaluation of the opinion of Consultative Examiner Dr. Jim Adams.**

For her fourth and final argument Plaintiff essentially argues the ALJ failed to acknowledge and evaluate findings regarding her right wrist in Dr. Adams' report. For the reasons given in the Commissioner's brief and footnote 4 above, this argument is without merit.

## Conclusion

Based on the foregoing, the Court concludes there is no reversible error in this case, and the Commissioner's decision is supported by substantial evidence in the record. Therefore, the decision of the Commissioner will be affirmed.

This 16th day of April, 2021.

/s/ Jane M. Virden
U.S. MAGISTRATE JUDGE

---

Plaintiff has made no colorable argument that these findings are inconsistent with the restrictions assessed by Dr. Lewis with regard to her right hand.